People v Castello (2019 NY Slip Op 07085)





People v Castello


2019 NY Slip Op 07085


Decided on October 2, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 2, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
SHERI S. ROMAN
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2015-03628
 (Ind. No. 3891/13)

[*1]The People of the State of New York, respondent,
v
Bennett Castello, appellant.


Paul Skip Laisure, New York, NY (Kathleen Whooley of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Gamaliel Marrero of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Danny K. Chun, J.), rendered April 7, 2015, convicting him of predatory sexual assault (two counts), rape in the first degree (two counts), sex abuse in the first degree, and burglary in the first degree as a sexually motivated felony, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.
ORDERED that the judgment is modified, on the law, by vacating the convictions of rape in the first degree (two counts), vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.
The defendant was charged with committing sexual offenses against the then-13-year-old complainant. On April 29, 2013, the complainant allegedly was followed into her apartment building by the defendant, a stranger, who then threatened her with a pair of scissors before assaulting her.
At a pretrial suppression hearing, a detective testified that the complainant viewed computer-generated photographic arrays on three different occasions: twice on April 30, 2013, and once on May 2, 2013. The detective also testified that when she met the complainant at the hospital on April 29, 2013, the complainant gave a description of the perpetrator as, among other things, a stocky white male with a round face, 5 feet 8 inches tall, and 30 to 35 years old. The detective further testified that, during the early morning of April 30, 2013, she displayed photographs to the complainant using the police department's computer photo manager system. The detective said that she entered into the computer the description of the perpetrator that the complainant had previously provided, and the computer randomly selected photographs, which she thought were displayed on the computer screen six photographs at a time. The detective testified that the complainant did not make an identification during this first viewing.
The detective testified that, later in the day on April 30, 2013, the complainant viewed additional photographs on a police computer of individuals who were included in the Sex Offender Monitoring Unit database in Brooklyn. She stated that the complainant did not make an [*2]identification during that second viewing.
The detective testified that on May 2, 2013, the complainant viewed photographs on a police computer of individuals who were included in the Sex Offender Monitoring Unit database, city-wide. The detective further testified that the complainant identified the defendant's photograph as the individual who raped her. The detective recalled that five days later, on May 7, 2013, she printed out the photograph that the complainant had identified. She acknowledged that the complainant did not sign the copy of the photograph that was printed. The detective also testified that on May 7, 2013, the complainant identified the defendant in a lineup.
In total, over the three sessions of viewing the photographs generated by the police department's computer photo manager system, the complainant viewed approximately 700 to 1,000 photographs. Although the detective printed out a four-page list of the sex offender identification numbers which corresponded to the photographs viewed by the complainant, she could not identify which one was the defendant's identification number or state that the numbers were in the same order as the photographs the complainant viewed.
The defendant moved, inter alia, to suppress the identification testimony on the ground that the identification procedures were unduly suggestive. Following a suppression hearing, the Supreme Court, inter alia, denied that branch of the defendant's omnibus motion which was to suppress the identification testimony. After a jury trial, the defendant was convicted of predatory sexual assault (two counts), rape in the first degree (two counts), sex abuse in the first degree, and burglary in the first degree as a sexually motivated felony.
We agree with the Supreme Court's denial of that branch of the defendant's omnibus motion which was to suppress identification testimony. "[U]nduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused" (People v Chipp, 75 NY2d 327, 335). "When a defendant challenges an identification procedure as [unduly] suggestive, the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness" (People v Delamota, 18 NY3d 107, 118 [internal quotation marks omitted]), "which is a minimal' burden of production'" (People v Busano, 141 AD3d 538, 539, quoting People v Ortiz, 90 NY2d 533, 538; see People v Sims, 146 AD3d 820, 820). The People's failure to preserve a record of what was viewed during the photo identification procedure gives rise to a rebuttable presumption of suggestiveness (see People v Holley, 26 NY3d 514, 521-522).
The presumption of suggestiveness may be overcome "by presenting sufficient evidence of nonsuggestiveness, such as by reconstructing the photo array from related materials" (People v Dobbins, 112 AD3d 735, 736) or through the testimony of a police witness detailing the manner in which the photo manager system was utilized to arrive at the identification (see People v Holley, 26 NY3d at 524-525; People v Busano, 141 AD3d at 540). "If the People meet their burden . . . the burden shifts to the defendant to persuade the hearing court that the procedure was improper" (People v Holley, 26 NY3d at 521).
Here, although the People did not produce in court the photographic arrays displayed through the use of the photo manager system, which gives rise to a presumption of suggestiveness, the People nevertheless rebutted that presumption and sustained their initial burden through the testimony of the detective, which established that she utilized the various databases applying the description of the perpetrator supplied by the complainant (see People v Busano, 141 AD3d at 541). The detective testified that the complainant was shown the computer-generated photo arrays a day after the incident occurred and then again three days later. The detective's unrebutted testimony established that 700 to 1,000 photographs were generated by the photo manager system, which were displayed in smaller arrays of photographs, from which, during the third viewing session, the complainant identified the defendant as the person who assaulted her (see id.). "[W]hen a photographic identification procedure involves showing a witness a preexisting file consisting of a large number of photographs, the sheer volume and scope of [the] procedure militates against the presence of suggestiveness'" (People v Mason, 138 AD2d 411, 412, quoting People v Jerome, 111 [*3]AD2d 874, 874; see People v Fields, 66 AD3d 799). Moreover, the complainant eventually identified the defendant in a lineup. Consequently, the People met their burden of overcoming the presumption of suggestiveness (see People v Holley, 26 NY3d at 525; People v Busano, 141 AD3d at 541). The burden then shifted to the defendant to establish that the identification procedure employed by the police was unduly suggestive, and the defendant failed to do so (see People v Busano, 141 AD3d at 541).
The defendant's contentions that the identification testimony was unreliable because the defendant's sex offender identification number did not appear on the list of photographs which had been shown to the complainant and that the lineup identification should have been suppressed because it was not sufficiently attenuated from the unduly suggestive photographic identification procedure are unpreserved for appellate review, and we decline to reach these contentions in the exercise of our interest of justice jurisdiction.
The defendant's contentions that his Sixth Amendment and due process rights were violated when the Supreme Court allowed a certain criminalist and rebuttal witnesses to testify and permitted the admission of certain rebuttal evidence, to the extent that those contentions were preserved, are without merit. Further, the defendant's contentions that his constitutional rights were violated by the introduction into evidence of the recordings of phone conversations he had while detained and by the prosecutor's conduct during trial are unpreserved for appellate review, and we decline to reach these contentions in the exercise of our interest of justice jurisdiction.
However, the defendant contends, and the People concede, that rape in the first degree is a lesser included count of predatory sexual assault (see Penal Law §§ 130.35[1]; 130.95[1][b]; [3]; People v Earl, 133 AD3d 875, 875; People v Ortiz, 95 AD3d 1140, 1141). Since the defendant's conviction of the greater count operates as a dismissal of the lesser counts pursuant to CPL 300.40(3)(b), we vacate the defendant's convictions of rape in the first degree (two counts) and the sentences imposed thereon (see People v Earl, 133 AD3d at 875; People v Ortiz, 95 AD3d at 1141).
AUSTIN, J.P., ROMAN, MILLER and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court